[Cite as *In re L.D.*, 2024-Ohio-4888.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| IN RE: L.D. AND B.D. | : | APPEAL NO. C-240401 |
| | | TRIAL NO. F19-221Z |
| | : | |
| | | |
| | : | *O P I N I O N.* |


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 9, 2024


*Alana Van Gundy*, for Appellant Father,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Robert Adam Hardin*, Assistant Public Defender, for Guardian ad Litem for the children.

**WINKLER, Judge.**

{¶1} Appellant father appeals the decision of the Hamilton County Juvenile Court awarding permanent custody of his children, L.D. and B.D., to the Hamilton County Department of Job and Family Services ("HCJFS"). For the reasons set forth below, we affirm.

## I. Background

{¶2} HCJFS initially moved for temporary custody of then seven-year-old L.D. and one-year-old B.D. in February 2019. In May 2019, the juvenile court adjudicated L.D. abused, neglected, and dependent, and adjudicated B.D. dependent. Father was residing in West Virginia at the time and had lost contact with his children and their mother. With the initiation of the underlying case, father attempted to reestablish a relationship by attending court hearings.

{¶3} The State of West Virginia conducted an investigation regarding possible placement of the children with father as part of the "ICPC," or Interstate Compact for the Protection of Children. West Virginia denied placement of the children with father based on his drug and criminal history. In September 2019, HCJFS sought to amend its case plan for a change in placement to allow the children to reside with father's sister, the children's paternal aunt, near Memphis, Tennessee. At the hearing on HCJFS's proposed change of placement, father testified that he wanted the children placed with his sister. The juvenile court eventually permitted the children to move to Tennessee in January 2020. In May 2020, HCJFS filed a motion to terminate its temporary custody and to award custody to the paternal aunt. HCJFS withdrew the motion to award custody to the children's aunt in November 2020, and the children returned to Hamilton County. The record shows that at that time, mother

and her live-in boyfriend had made strides in complying with their case-plan services, and therefore HCJFS sought reunification of the children with mother.

{¶4} On July 29, 2021, HCJFS filed a motion for permanent custody. After several continuances, trial on HCJFS's motion occurred in October 2023 before the magistrate. Mother was present via Zoom for the hearing from her residential placement at Summit Behavioral Health. Mother struggled with mental-health issues and had not had contact with her children since approximately June 2021. HCJFS presented the testimony of its caseworker, who testified that father had not communicated with the caseworker since she began working on the case in November 2021, until father reached out to her in January or February of 2023. Father informed the caseworker that he had been incarcerated, but that he wished to establish a relationship with the children. The caseworker began to slowly introduce the topic of father to L.D., and L.D. began to suffer worsening anxiety. The caseworker testified that L.D. had mental-health issues, and that L.D.'s therapist had concerns about L.D.'s mental status with the possible reintroduction of her father into her life. Therefore, L.D.'s therapist recommended that father not establish any type of communication or visitation with his children. The caseworker testified that the children had been doing well in their foster home, which they had been placed in since June of 2023.

{¶5} Father testified at the permanent-custody hearing. Father stated that he had visited L.D. and B.D. in Tennessee once while they resided with his sister; otherwise, he admitted that he had no contact with the children. Father explained that he had not reached out to his children because he had heard from his sister that HCJFS had taken the children back to Hamilton County to be reunited with their mother. Father testified that child-support payments for L.D. had been deducted from his

3

paycheck when he worked. Father reached out to the child-support agency and eventually the ongoing caseworker in 2023. Father testified that he had tried to send letters and gifts to the children, but that the caseworker would not allow father to contact the children directly. At the time of the hearing, father resided in West Virginia with his two-year-old child and his girlfriend, and he was not employed.

{¶6} After trial, the magistrate entered a decision finding that permanent custody of L.D. and B.D. to HCJFS was in the best interest of the children and awarded permanent custody to HCJFS. Father filed objections to the magistrate's decision on the basis of sufficiency and weight of the evidence. Mother did not file objections. The juvenile court overruled father's objections, conducted an independent review, and adopted the magistrate's decision as the decision of the court. Father appeals.

## II.    Law and Analysis

### A.  Sufficiency and Weight of the Evidence

{¶7} In father's first assignment of error, he argues that the juvenile court's award of permanent custody of L.D. and B.D. to HCFJS was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶8} In reviewing a juvenile court's decision to grant permanent custody on sufficiency-of-the-evidence grounds, this court must determine whether clear and convincing evidence supports the juvenile court's decision. *In re A.B.*, 2015-Ohio-3247, ¶ 15 (1st Dist.). This court accepts the juvenile court's factual determinations if they are supported by competent and credible evidence. *In re W.W.*, 2011-Ohio-4912, ¶ 46 (1st Dist.). In reviewing a juvenile court's decision to grant permanent custody on weight-of-the-evidence grounds, this court considers "whether the [juvenile] court lost its way and created such a manifest miscarriage of justice in resolving conflicts in

the evidence that its judgment must be reversed." *In re P/W Children*, 2020-Ohio-3513, ¶ 27 (1st Dist.).

{¶9} On a motion for permanent custody brought by a children's services agency under R.C. 2151.413, a juvenile court must analyze the two-prong test set forth in R.C. 2151.414. R.C. 2151.414(B) provides that a juvenile court can grant permanent custody of a child to a children's services agency if the court finds by clear and convincing evidence that (1) permanent custody is in the child's best interest and (2) one of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies.

{¶10} Although father does not challenge the juvenile court's finding as to the conditions listed in R.C. 2151.414(B)(1)(a) through (e), the juvenile court relied in part on R.C. 2151.414(B)(1)(d), which requires a finding that the children have been in temporary custody of a children's services agency for 12 or more months of a consecutive 22-month period. The evidence showed that L.D. and B.D. entered temporary custody of HCJFS in February 2019. The children lived with a paternal aunt in Tennessee during a seven-month period in 2020, but then returned to Hamilton County to the custody of HCJFS. The children remained in HCJFS's custody with a foster family at the time of trial in October 2023. Therefore, the record supports the juvenile court's determination that L.D. and B.D. had been in the custody of HCJFS for more than 12 months of a consecutive 22-month period.

{¶11} In addition to the conditions in R.C. 2151.414(B)(1)(a) through (e), the juvenile court must also determine whether a grant of permanent custody is in the children's best interest. *See* R.C. 2151.414(B)(1). In evaluating the best interest of the children under R.C. 2151.414, the juvenile court considers all of the relevant factors under R.C. 2151.414(D)(1), or the factors in R.C. 2151.414(D)(2). *In re P*, 2024-Ohio-

5

2794, ¶ 19 (1st Dist.). In this case, the juvenile court analyzed the factors under both R.C. 2151.414(D)(1) and (D)(2) and found that under either standard the best interest of the children would be served by a grant of permanent custody to HCJFS.

{¶12} As to the best-interest factors under R.C. 2151.414(D)(1), with regard to R.C. 2151.414(D)(1)(a), the children's relationship with parents and foster caregivers, and R.C. 2151.414(D)(1)(b), the wishes of the children, father argues that HCJFS failed to provide father with the opportunity to interact with his children after he contacted the agency in 2023, and that HCJFS failed to establish the wishes of the children. The juvenile court determined that father had been largely absent from the children's lives, and although L.D. was initially excited about father's reappearance in her life, her mental health deteriorated once more with the introduction of the topic of her father. L.D.'s therapist recommended that L.D. refrain from have any increasing contact with her father because of her reaction. The evidence also shows that the children had established a bond with their foster caregivers. The juvenile court determined that five-year-old B.D. did not fully comprehend the nature of the proceedings, but that she wished to return to her mother. L.D. wished to remain with her foster parents. The children's guardian ad litem also recommended that the children remain with their foster parents.

{¶13} As to R.C. 2151.414(D)(1)(c), the custodial history of the children, the juvenile court determined that the children had been in foster care for more than 12 months of a consecutive 22-month period.

{¶14} As to R.C. 2151.414(D)(1)(d), the children's need for a legally-secure placement, and whether that placement can be achieved without a grant of permanent custody, father argues that HCJFS did not make reasonable efforts to include father

6

or his sister in the case-plan process. The juvenile court determined that father's ICPC had been denied, and therefore the children could not be placed with him. The juvenile court also noted father's absence from the children's lives prior to early 2023, and its concern with father's recent criminal charges involving heroin and firearms. Furthermore, the record shows that paternal aunt was aware of the permanent-custody proceeding, but did not file a motion for custody of the children.

{¶15} Finally, with regard to R.C. 2151.414(D)(1)(e), and whether any of the factors in divisions R.C. 2151.414(E)(7) through (11) applied, the juvenile court determined that R.C. 2151.414(E)(10) applied and that the parents had abandoned the children. "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C). With regard to father, the juvenile court determined that father abandoned the children from the period of August 2020 until March 2023. Although father paid child support for a short period of time, father did not make any payments for up to two years. More importantly, father did not communicate with his children during that time.

{¶16} We conclude that the juvenile court's determination as to the best-interest factors under R.C. 2151.414(D)(1) was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, the juvenile court's decision to award permanent custody of L.D. and B.D. to HCJFS was also supported by sufficient evidence and was not against the manifest weight of the evidence, and this court need not review the juvenile court's decision with respect to the best-interest factors under R.C. 2151.414(D)(2).

7

**{¶17}** We overrule father's first assignment of error.

### B. Reasonable Efforts

**{¶18}** In father's second assignment of error, he argues that the juvenile court erred in awarding permanent custody of L.D. and B.D. to HCJFS, because HCJFS failed to use reasonable efforts to ensure that the children returned home. Father did not object to the magistrate's decision on the basis that HCJFS failed to use reasonable efforts, so he has waived all but plain error for the purposes of appeal. *See* Juv.R. 40(D)(3)(b)(iv).

**{¶19}** Under R.C. 2151.419(A)(1), a juvenile court must determine whether a children's services agency made "reasonable efforts" to prevent the removal of a child from the child's home, and to eliminate the continued removal of the child from home. The children never lived in father's home, and moreover, if a child has been abandoned, the reasonable-efforts analysis does not apply. *In re A.W.*, 2021-Ohio-3914, ¶ 27-28 (1st Dist.); R.C. 2151.419(A)(2)(d). In this case, HCJFS was not required to use reasonable efforts with regard to father where the evidence showed that father abandoned the children for approximately a two-year period. Father does not dispute that he had no contact with his children for two years. Therefore, the juvenile court did not plainly err in failing to conduct a reasonable-efforts analysis with regard to father prior to granting permanent custody of his children to HCJFS.

**{¶20}** We overrule father's second assignment of error.

### III. Conclusion

**{¶21}** Having overruled father's assignments of error, we affirm the juvenile court's judgment awarding permanent custody of L.D. and B.D. to HCJFS.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:

      The court has recorded its own entry on the date of the release of this opinion.